Paul C. Reuss, J.
Prior to the appropriation, which is the subject of this claim the claimants were the owners in fee of a tract of land located in the Town of Ulster, County of Ulster, State of New York, comprising approximately 43.437 acres.
On March 6, 1959 the State of New York pursuant to section 30 of the Highway Law appropriated approximately 0.277 acres from the>claimants’ land for a temporary easement for highway purposes by filing Interstate Route Connection No. 530, Map No. 8, Parcel No. 12 with a description of the property appropriated, in the office of the Ulster County Clerk on March 6, *669 1959. Thereafter the State of New York pursuant to section 30 of the Highway Law appropriated in fee approximately 4.890 acres from the claimants’ land for highway purposes by filing Interstate Route Connection No. 530, Map No. 3, Parcels Nos. 3, 5, 6, 7 with a description of the parcels appropriated in the office of the Ulster County Clerk on June 4, 1959. Parcels Nos. 5, 6 and 7 were acquired by the State without right of access to and from abutting property. Subsequently the State of New York pursuant to section 30 of the Highway Law appropriated in fee an additional 3.380 acres of the claimants’ property by filing Interstate Route Connection No. 530, Map No. 36, Parcels Nos. 55 and 56, with a description of the property so appropriated, in the Ulster County Clerk’s office on November 29, 1959. The total area appropriated, for all purposes, was approximately 8.547 acres.
It was stipulated in open court that March 6, 1959 be considered the appropriation data from which the computation of interest should be made.
The court adopts the maps and descriptions of the appropriated property shown and set forth on such maps and reference is made thereto for such description without repetition thereof.
The claim herein was filed in the office of the Clerk of the Court of Claims and a copy thereof was served upon the Attorney-General on April 17, 1959.
Upon the trial the claimants’ motion to increase the amount of their claim from $250,000 to $555,124 was granted without objection.
Prior to the appropriation the claimants’ land consisted of an irregularly shaped tract fronting on Route No. 28, on the west, for 360 feet; on the north on Sawkill Road for approximately 1,565 feet; and on the east and south on Brabrant Road for 1,898.50 feet. The remaining parts of the claimants’ tract abutted on adjoining property. A small road known as Powell Lane ran through part of the property and the Walker land fronted on this lane for approximately 651 feet. A small part of the tract approximately 1.02 acres in area was located on the south side of Brabrant Road and had a frontage of 180 feet on Esopus Creek. Parcel No. 12, the temporary easement, was located in this area.
There were some 16 buildings located on the premises including the Walker residence, a one-story, brick, one-family dwelling ; a two-story, one-family dwelling of six rooms at the intersection of Route No. 28 and Sawkill Road; a metal or steel hangar situate on Sawkill Road; and a roadside stand on Route *670 No. 28; a one and a-half story frame dwelling of seven rooms and bath, with a one-story frame addition on the south as well as various barns, garages, storage houses, a greenhouse, etc. Only one structure, a one-story frame one-car garage, 16 feet by 18 feet, was located within the appropriated area. Any consequential damage resulting to the buildings from the appropriation is minimal, since they were not adapted to the highest available use of the property. The claimants’ real estate expert took this position, in his appraisal by allowing only $300 damage to the building, i.e. direct damage for the loss of the garage. We accept his opinion on this item.
The entire tract was level, on grade and stone free. It was excellent truck-farm land and at one time had been used as an airport, as well as for farming.
The subject property was located approximately 1,200 feet from the city line of the City of Kingston and was also adjacent to the intersection of Route No. 28 with Route No. 209; and was 700 feet from Thruway Exit No. 19. The area was not zoned and had been designated in the Town Development Plan of the Town of Ulster for shopping and service purposes.
Appropriated Parcels Nos. 5, 6 and 7 which were taken without the right of access, were acquired for the construction of the new arterial highway, Interstate Route Connection No. 530, Parcels Nos. 55 and 56 were used to relocate Sawkill Road and raise its grade to a maximum of approximately 20 feet to cross the new interstate route. The former Sawkill Road, Brabrant Road and Powell Lane were dead-ended at the new arterial route.
The takings had the effect of dividing the claimants ’ land into five separate parcels, in addition the parcel of the land to the south of Brabrant Road, which always had been separated by that thoroughfare. After the appropriation, a 6.671-acre parcel was located northeast of the intersection of the relocated Saw-kill Road and the new interstate route. A larger tract 20.317 acres in area was located to the southeast of such intersection. A 2.528-acre parcel fronting 360 feet on Route No. 28 was located to the west of the intersection. A 4.28-acre parcel fronting on Powell Road and Brabrant Road was located to the southwest of the intersection: 0.225 acres fronting on Powell Road was located south of the relocated Sawkill Road. After the appropriation all of the parcels had suitable access to adjacent thoroughfares. But, claimants did not have access through their lands to all parts of their property.
As is usual in this type of proceeding, there is a vast difference in the appraisals of the real estate experts who testified *671 for the parties upon the trial. Part of such difference at least may be attributed to the disagreement of these witnesses with respect to the best available use of the premises. The function of this court is to make an award which will fairly compensate the claimants for the land appropriated. They are entitled to be paid the fair market value of such land at its best available use even though the land is not devoted to such use at the time of the appropriation. (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583.)
,The claimants contend the best available use or the use for which the property is most valuable would be as a shopping center.
Two of the real estate experts called by the State appraised the claimants’ property on the basis that the best available use for such tract was as a real estate subdivision. One of these gentlemen admitted, however, that the area fronting on Route No. 28 was suitable for strict commercial development. The other rather reluctantly admitted that this same area may be suitable for a small service store.
The third expert witness called by the State appraised the tract on the basis of the suitability of the acreage fronting Route No. 28 and Sawkill Road for commercial purposes, and the remainder for a real estate subdivision. We note that he allowed a unit price of $5,000 per acre for the commercial area, this being the highest unit value assigned to any part of the tract by the State’s appraisers. All three of the defendant’s witnesses admitted that the claimants ’ property was physically well suited and adaptable for use as a regional shopping center. The land was level and at the same grade as the abutting highways. There was sufficient acreage and excellent drainage. It fronted on several thoroughfares and was adjacent to the intersection of Routes Nos. 209 and 28 as well as to the City of Kingston and Exit No. 19 of the New York State Thruway.
Two of these experts stated that in their opinion the tract was not available for use as a shopping center solely because;' such an enterprise would not be economically sound. One of these witnesses in concluding that the area was not suitable for a shopping center, stated he considered the volume of business necessary to support a shopping center and concluded there was not sufficient business in the area to do so. He arrived at such conclusion despite the fact he was unaware of the volume of business usually done in Ulster County.
The third witness proceeded to place the testimony of his two predecessors in a rather questionable light by pointing out that a now shopping center was actually underway in the general *672 area at Hurley Boad. This latter gentleman took the position that the claimants’ property was not suitable for a shopping center at the time of the appropriation solely because the chief means of access to the City of Kingston was by way of Boute No. 28, which was carried over the Esopus Creek and into such city by a narrow antiquated bridge.
This witness apparently overlooked the fact that in 1959 the average daily traffic count on Boute No. 28, in the area of the claimants’ property, was 11,098. Moreover in weighing the testimony of these experts we cannot overlook the fact that not one of them was a local broker or appraiser. One was from Buffalo, another from Albany, and a third maintained his office in White Plains. Furthermore these gentlemen never participated in any transactions involving the transfer of real property in Ulster County either as broker or principal. Their knowledge of the local area and real estate values therein was acquired, for the most part, in connection with this claim and others arising out of the same project. Such knowledge was, at best, superficial and we are compelled to regard it accordingly.
On the other hand the real estate expert called by the claimants was a local broker and appraiser and well acquainted with the conditions prevailing in the Kingston area, and we give more consideration to his opinion. We conclude that the preponderance of the credible evidence supports a finding that the best available use for the claimants’ property, at the time of the appropriation, was as a shopping center.
Proceeding to the question of the actual value of the subject property we note that the claimants’ premises, consisting of approximately 43 acres, was all in one tract and title was in one ownership. It was ideally located and physically adaptable for shopping center purposes, with a minimum of work. Moreover the Kingston area was expanding population wise and economically, making such a venture feasible. However, on the other hand, the claimants’ expert had little or no experience with the sale of land for shopping centers or with the promotion of such enterprises.
The list of comparable sales he submitted does not support his appraisal of $50,000 per acre for the 8.550 acres bordered by Sawkill Boad, Boute No. 28, Powell Boad and Brabrant Boad. Although two sales listed indicate per-acre value of upwards of $50,000 both of these parcels were less than one acre and were located at a different location than the subject property.
The other sales on the list indicate an over-all unit-acre value for the entire tract considerably less than the $50,000 figure *673 assigned to the grade “ A ” area already referred to and also less than the $15,000 figure assigned to the 11.732 so-called grade “ B ” area.
Of the properties on comparable lists supplied by both parties, only two parcels are comparable to the subject property in size and, except for this factor, they are not otherwise comparable. The other parcels submitted are considerably smaller than the subject property and hardly can be considered comparable in that sense. Thus, they were not as adaptable for shopping center purposes as the claimants’ property, nor were they as well located for such purposes. However, the various sales do serve as a guide and indication of local real estate values and we have given considerable consideration to all these factors in making our award herein.
As we have indicated (supra), only one building, a frame garage, was taken in the appropriation and we have considered the value of such structure. We have not allowed consequential damages for the remaining buildings for the reasons stated.
The claimants’ land was no longer suitable for shopping center purposes after the appropriation. However, the area fronting Route No. 28 was still available for commercial purposes and the remaining acreage had value for residential purposes.
Upon the consideration of all the evidence we find that the value of the claimants’ premises before the appropriation was $393,400. That the value of the claimants’ property after the appropriation was $129,000; that the claimants have been damaged in the sum of $264,400 including direct and consequential damages, as a result of the appropriations of their property by the State of New York.
The claim has not been assigned.
The court has viewed the property.
On January 17,1961 the claimants received the sum of $55,500 from the State of New York as a partial payment for the appropriated property.
The claimants are entitled to an award against the State of New York in the amount of $264,400 less $55,500 or $208,900, with interest thereon from March 6, 1959 to the date of entry of judgment herein.